**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

REC'D OCT 0 3 2023

MICHAEL ZIELANSKI, pro se
2110 S Eagle Rd #336
Newtown PA 18940

v.

BUCKS COUNTY CHILDREN
& YOUTH SOCIAL SERVICES AGENCY
55 E Court Street, 3rd Floor
Doylestown PA 18901

and

MARJORIE MCKEONE, individually and
as Director of Bucks County Children &
Youth Social Services Agency
55 E Court Street, 3rd Floor
Doylestown PA 18901

and

CHRISTOPER DOHENY
LISA BIELAWSKI
SUZANNE X MANCINELLI
THÉRÈSE ALIMI,
individually and as an employee of
Bucks County Children & Youth Social
Services Agency
55 E Court Street, 3rd Floor
Doylestown PA 18901

CIVIL NO:

## COMPLAINT

### Introduction

1. Plaintiff, MICHAEL ZIELANSKI, brings this action in his own right.  By the actions of the above named Defendants as will be fully set forth, the civil rights of the Plaintiff were violated. Plaintiff seeks to vindicate the violation of rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and 42 USC § 1983.

### Jurisdiction

2. As Plaintiff seeks to vindicate rights protected by the Fifth and Fourteenth Amendments to the United State Constitution and 42 U.S.C Section 1983, this Court jurisdiction over this civil action pursuant to 28 U.S.C. Sections 1331 and 1343 (a)(3) and (4).  Pursuant to 28 U.S.C. Sections 2201 and 2202, this Court has jurisdiction to declare the rights of the parties and grant all further relief found necessary and proper.

### Parties

3. Plaintiff, MICHAEL ZIELANSKI, is a citizen of the United States and resident of Bucks County, Pennsylvania.

4. Defendant, MARJORIE MCKEONE, is the Director of Defendant, BUCKS COUNTY CHILDREN AND YOUTH SERVICES AGENCY. Defendant MCKEONE had the responsibility to assure that said agency met its official regulatory responsibility for ensuring the the safety and well-being of children in Bucks County and not restrict the generally recognized existing rights of parents to use reasonable supervision and control when raising their children, while making sure her and her employees conduct themselves in accordance with all laws, regulations and agency policies.

5.  Defendant, CHRISTOPHER DOHENY, is an employee of Defendant, BUCKS COUNTY CHILDREN AND YOUTH SERVICES AGENCY. Defendant DOHENY had the responsibility to investigate allegations of child abuse while conducting himself in accordance with all laws, regulations and agency policies.

6.  Defendant, LISA BIELAWSKI, is an employee of Defendant, BUCKS COUNTY CHILDREN AND YOUTH SERVICES AGENCY. Defendant DOHENY had the responsibility to investigate allegations of child abuse while conducting herself in accordance with all laws, regulations and agency policies.

7.  Defendant, THÉRÈSE M. ALIMI, is an employee of Defendant, BUCKS COUNTY CHILDREN AND YOUTH SERVICES AGENCY, in a supervisory role.  Defendant ALIMI had the responsibility to investigate allegations of child abuse while conducting herself in accordance with all laws, regulations and agency policies, while ensuring her subordinates conduct themselves in accordance with all laws, regulations and agency policies.

8.  Defendant, SUZANNE X MANCINELLI, is an employee of Defendant, BUCKS COUNTY CHILDREN AND YOUTH SERVICES AGENCY, in a supervisory role. Defendant ALIMI had the responsibility to investigate allegations of child abuse while conducting herself in accordance with all laws, regulations and agency policies, while ensuring her subordinates conduct themselves in accordance with all laws, regulations and agency policies

### Factual Allegations

9.  On or about June 15, 2022, MICHAEL ZIELANSKI (hereinafter called "Zielanski") and his sixteen year old minor daughter, B.Z. (hereinafter called "B.Z."), had a verbal

disagreement at their residence that became physical.  During the verbal disagreement, B.Z. began to aggressively push Zielanski into a bedroom wall, causing blood from Zielanski's right elbow to splatter onto the bedroom wall. In an attempt to protect himself, gain control of B.Z to maintain order and to discipline her, Zielanski used reasonable force to restrain B.Z.from continuing to push him.  Once B.Z. calmed down, Zielanski let her go and left the room.

10.  On or about June 16, 2022, upon information and belief, Keira Uslin (hereinafter called "Uslin"), Zielanski's ex wife and the mother of B.Z., called the police and Defendant, BUCKS COUNTY CHILDREN AND YOUTH SERVICES AGENCY (hereinafter called "BCCY") and made false allegations about the events that transpired between B.Z. and Zielanski.  This report of false allegations prompted BCCY to investigate the above referenced incident.

11.  Upon information and belief, Keira Uslin reported to the police and BCCY that B.Z. was not injured and did not require medical attention.

12.  At no point throughout the entire investigation, was it ever reported or was there every evidence presented, that B.Z. was in pain, was in need of medical treatment, or sustained any bodily injury as defined by Title 23 of Pennsylvania Consolidated Statutes.

13.  On or about June 17, 2022, CHRISTOPER DOHENY (hereinafter called "Doheny"), and Detective Nicholas Moffett of the Newtown Township Police Department, interviewed B.Z. while she was at a friend's house.  Present during the interview were B.Z.'s friend, a minor, named G.R., and her mother, Arlene Rocco.

14.  During the interview, upon information and belief, B.Z. told Doheny and Detective Moffett, that she and Zielanski had a verbal argument and that she initiated contact with Zielanski by pushing him and that Zielanski in turn grabbed her.  Upon information and beliefs, both G.R. and Arlene Rocco confirmed that this statement was made by B.Z. to Doheny and Moffett.

15.  On or about June 17, 2022, Detective Moffett and Doheny, visited Zielanski at his residence in an attempt to speak to him about the incident. Zielanski declined to speak with both Detective Moffet and Doheny.

16.  Later in the day on June 17, 2022, Zielanski was arrested for Simple Assault and Endangering the Welfare of a Child by Detective Moffett, handcuffed, deprived of his freedom, and subsequently acquitted of all charges on November 14, 2022.

17.  Upon information and belief and according to Detective Moffett's supplemental report dated June 17, 2022, and without ever speaking to Zielanski or visiting his house or completing a complete investigation into the reported allegations, Doheny told Detective Moffet on June 17, 2022 that "his report would state that this was a founded cased of abuse."

18.  Prior to Zielanski's acquittal, and as a condition of his bail modification hearing on June 22, 2022, it was ordered that Zielanski cooperate with BCCY.

19.  On or about June 22, 2022, Zielanski had his first brief conversation with Doheny over the phone.  Zielanski asked Doheny if Zielanski could record the conversation but Doheny declined. Doheny did not advise Zielanski of his right to counsel as required by 23 Pa.C.S. §6368.

20.  During the call on June 22, 2022, Zielanski and Doheny spoke very briefly about the details of what transpired on June 15, 2022. Zielanski advised Doheny that on the day of the incident, Zielanski and B.Z. had a verbal disagreement because of among other things, Zielanski found drugs and alcohol in her closet, B.Z. initiated contact with him by pushing him into a wall and that there was blood splatter on the wall as evidence to support this assertion.  Zielanski advised he grabbed B.Z. in an attempt to restrain her to prevent being assaulted further, and to discipline B.Z. because she pushed Zielanski and because of other events leading up to the disagreement. Zielanski advised he had never put his hands on B.Z. before and that B.Z. never put her hands on Zielanski before.  This was a one time event. Zielanski advised Doheny that he did not break any laws, intend to injure his daughter, intend to abuse his daughter in any way, but he accepts responsibility for how things escalated because he is the leader of the household.  Zielanski invited Doheny to his home to view evidence and to get a formal statement from Zielanski but Doheny declined.

21.  Doheny advised Zielanski that several another representative from his agency would contact him to investigate the incident further and to make other recommendations. Zielanski was confused and skeptical, but agreed to continue the process as it was a condition of his bail and because Doheny assured him that BCCY were there to only help and promote a positive relationship between Zielanski and B.Z.

22.  On or about July 6, 2022, Zielanski had an initial telephone conversation with Bielawski. Zielanski informed Bielawski of the details of the incident as already stated in this pleading. The conversation was rushed as Bielawski stated she was heading into another appointment. Zielanski advised Bielawski he was very confused about his

conversation with Doheny and confused about what to expect next. Bielawski told Zielanski she wanted to visit his residence to meet with Zielanski and B.Z. to discuss the incident on June 15, 2022 and to explain next steps.

23.  Later in the day on July 6, 2022, Zielanski called and spoke with Doheny for the second time. Zielanski called Doheny because he was confused about his conversation with Bielawski and wanted clarity around what was happening. During this second conversation with Doheny, Doheny revealed he was going to report Zielanski as "indicated" for child abuse. Zielanski was shocked to learn this from Doheny as Zielanski had never given a formal and complete statement about the incident and thought the investigation was still ongoing per Doheny's comments on June 22, 2022. Zielanski begged Doheny not to finalize his investigation and begged Doheny to visit Zielanski's home so Zielanski could give a formal statement about the incident and to show evidence to Doheny that may contradict Doheny's opinions of the incident. Doheny refused Zielanski's invitation.

24.  Later in the day on July 6, 2022, Zielanski sent several emails to Doheny. Zielanski voiced his frustration to Doheny that he (Zielanski) believed Doheny misled him and wasn't fully transparent when they spoke on June 22, 2022. Zielanski requested a full copy of his file with BCCY. Zielanski further advised he didn't have the opportunity to give his version of events and reminded Doheny that he (Doheny) did not visit his home to view evidence that could contradict his beliefs. Zielanski advised that Doheny read back "notes" to Zielanski from their June 22, 2022 conversation that were not an accurate representation of what Zielanski told Doheny.  Zielanski once again asked Doheny to not "rush" the investigation and once again invited Doheny to visit his

home to view evidence and to discuss the matter in "more detail". Zielanski asked that Doheny forward his emails and concerns to Doheny's supervisor and to the Director and to make Zielanski's emails part of his file. Doheny never responded.

25. On or about July 11, 2022, upon information and belief, Doheny, with the approval and oversight of Marjorie Mckeone (hereinafter called "Mckeone") and others at BCCY including Mancinelli, Virginia Trea and Chelsey Jackman, notified Pennsylvania Department of Human Services and/or the Childline and Abuse Registry, via CY48, that Zielanski committed child abuse and that his status determination was "indicated". This was reported in their CY48 report dated July 11, 2022.

26. In the July 11, 2022 report, approved by Doheny, McKeone, Mancinelli, Virginia Trea and Chelsey Jackman, it states that Zielanski was responsible for causing bodily injury to the victim child (B.Z.) which constitutes abuse under CPSL.

27. On or about, July 20, 2022, Zielanski met with Bielawski, BCCY attorney Elizabeth Oquendo, and Zielanski's retained attorney Marc Rickles, at Zielanski's residence. Upon information and belief, during said meeting, Bielawski met for the first time with B.Z. who communicated zero concerns and said that she feels safe being home with Zielanski.

28. At the above meeting, it was first discussed and briefly discussed, that BCCY wanted Zielanski to participate in a Triple P program through a third-party that BCCY contracted with called KS Consulting. Bielawski nor Oquendo, had any details to share about the program or any brochures to give Zielanski about his involvement with BCCY or their recommendation of the Triple P program. Zielanski was advised a

representative of the Triple P program would contact Zielanski and provide such details.

Zielanski agreed to cooperate with the limited information he had.

29.  On July 25, 2022, Pennsylvania Department of Human Services mailed

Zielanski a letter that stated he was listed in the Statewide Database as a perpetrator in

an indicated report of child abuse. The letter stated in bold print "**THIS IS A VERY**

**SERIOUS MATTER"** (emphasis not added). The letter also states Zielanski will be

prevented from working in an organization serving children or a public or private school

or from becoming a foster care or adoptive parent or volunteering in an organization

serving children or public or private school or from obtaining certain educational

degrees or certificates or other volunteer and employment opportunities may also be

negatively affected.

30.  On or about, July 26, 2022, Zielanski spoke with Camilla Montenegro of KS

Consulting over the phone, Ms. Montenegro was the case working assigned for the

Tripe P program.  Ms. Montenegro wanted to visit Zielanski's residence to discuss the

program.  Zielanski asked if all interactions with Ms. Montenegro and her Triple Program

could be video taped to assure transparency, accuracy and continuity with the process.

Ms. Montenegro rejected Zielanski's request. Zielanski stated he is concerned about

what information would be gathered by Montenegro and what information would be

shared with BCCY and the police.  Zielanski reminded Montenegro that there are

pending criminal charges and that Zielanski has a right to remain silent so he doesn't

incriminate himself.

31.  On or about August 5, 2022, Zielanski sent Bielawski an email stating, among

other things, he seeks transparency and clarity in all aspects of his involvement with

BCCY.  Zielanski indicated he is very skeptical of BCCY and their intentions as Doheny

has already lied to Zielanski and misled Zielanski.

32.  On or about, August 11, 2022, Montenegro visited Zielanski at his residence to

discuss the program. Zielanski agreed to participate in the Tripe P programs if all parties

agreed in writing to be transparent and/or limit the information that was shared with

BCCY and/or the police from Zielanski's involvement with the Tripe P program.  During

the meeting, Zielanski called Bielawski to discuss his concerns with making statements

while participating in the program that might incriminate himself because of his pending

criminal charges. Bielawski said she would discuss Zielanski's concerns with her

supervisor and she also made an appointment to visit Zielanski and B.Z. the next day.

Montenegro advised she would discuss Zielanski's concerns with her supervisor.

Zielanski sent a follow up email to Bielawski requesting a copy of the Safety Plan as he

never received one and he wanted to be in compliance with the Safety Plan, per his bail

conditions.

33.  On or about, August 12, 2022, Bielawski visited Zielanski's residence to meet

with B.Z. and to talk with Zielanski.  Upon information and belief, during Bielawski's

meeting with B.Z., no problems were reported regarding B.Z. living with Zielanski and

B.Z. stated that things have been good living with her father.

34.  During the August 12, 2022 meeting with Bielawski, Zielanski made it clear he

would participate with the Triple P program but he is concerned with what information

will be gathered and shared with BCCY and the police since there are pending criminal

charges. Zielanski stated he would move forward with the program if there was a written

agreement that limited the information that would be shared between Tripe P and BCCY

and the police.  Zielanski stated his has a right to not make self incriminating statements and that he already doesn't trust BCCY because Doheny misled him and lied to him. Zielanski stated if the goal of his participation in the Triple P program is to help him be a better parent not gather additional information/evidence against him, even though he doesn't think it is necessary, he doesn't think it should be a problem to limit the information that is reported to BCCY and that he should be able to video tape all interactions with the Triple P program for transparency and accuracy.

35.  Bielawski stated in the above conversation that she understood Zielanski's concerns about the sharing of information between BCCY, police and Tripe P program and that she should speak to her manager and contact Zielanski to discuss further.

36.  On or about August 30, 2022, Zielanski received a letter from Bielawski, sent first class mail via the United State Postal Service.  The letter was dated August 23, 2022 and it was posted marked August 25,2022, by a Pitney Bowes machine.  The letter stated that BCCY has completed it assessment as to whether B.Z. is in need of General Protective Services.  The letter continues to state that BCCY's assessment has determined that such services are needed to ensure the safety of B.Z. and to provide service to the family.

37.  The letter dated August 23, 2023 also states:

> "Every parent who receives services has the right to explanation about the reasons why your family is involved with the Agency; your Family Service Plan (FSP); and any court actions, court orders, or other legal documents.  You have the right to participate in creating and signing the FSP, receiving the services described in the FSP, be informed of any changes to your FSP, and coordinating any additional services you feel are necessary."

The letter also states:

"Under Pennsylvania's Child Protective Service Law, if you feel that the child(ren) is(are) not at risk of abuse or neglect, and that General Protective Services are not required, you may Appeal, in writing, to Marjorie McKeone, the Director of the Agency, at the address contained at the top of this letter.  Your appeal must be received by the Agency within 45 days of the date of this letter and should contain your reasons why the child are not at risk of abuse or neglect and why General Protective Services should not be required.  Please be advised that the Agency is obligated by Law to continue our involvement with you during the appeals process. If prevented from doing so, we may petition the court for your cooperation."

38.  Bielawski and BCCY had 60 days to make the above determination for General Protective Services from June 16, 2023 according to 23 Pa.C.S. § 6375 (c). If they made the determination of GPS on August 23, 2023, they are over the deadline by 6 days as the initial report was made to BCCY on June 16, 2023.

39.  On or about August 30, 2023, upon information and belief, BCCY had a staffing meeting to discuss the case for Zielanski and B.Z.  Among several other suggestions, it was suggested to "follow up with the detective to find out if a hearing date has been set and let him know that the father is refusing to cooperate with the Agency's in-home services; maybe the'll reconsider dropping the child endangerment charge" states Lindsay Cooper in her Note Narrative.  Present during the meeting were Alimi, Lindsay Cooper, Doheny, Mancinelli, and others.

40.  On or about August 30, 2022, upon information and belief, Doheny sent an email to Detective Moffett that said  "We had a meeting today with all the managers regarding the status of the participation for Mr. Zielanski with the agency and the provider services.  There have been concerns that Mr. Zielanski is not participating with the recommended services and continues to downplay the seriousness of the incident."

41.  On or about September 2, 2022, Zielanski received a telephone call from Bielawski.  Bielawski stated they had a meeting and they do feel it is necessary for Zielanski to participate in the parenting program. Zielanski expressed disappointment that he was lied to again by BCCY, because Bielawski is misrepresenting his position about participating in the Triple P program.  Zielanski stated he wanted all future communication and correspondence to be kept to in writing only to maintain transparency and accuracy.

42.  On or about September 9, 2022, upon information and belief, Bielawski met with B.Z. in the conference room of the guidance office.  Before meeting with B.Z., Bielawski spoke with Mr. Mike Fire (CR South Social Worker) and learned from Fiore that he hadn't heard of any incidents involving B.Z. Bielawski also spoke with Ms. Warshaw (Social Worker-CR North) and she (Warshaw) also confirmed there haven't been any concerns regarding B.Z. either.  During Bielawski's meeting with B.Z., it was confirmed that "things have been fine" at home with her father. B.Z. did not report any safety concerns during their interaction.

43.  On or about September 19, 2022, upon information and belief, the Family Service Plan (FSP) was created and reviewed by Therese Alimi.  The (FSP) was never given to or shared with Zielanski at any point of his entire involvement with BCCY.

44.  On or about October 6, 2022, Bielawski met with B.Z. at her school.  B.Z. stated that things have been going well in the home. She stated that she and her father have not been fighting.  When asked if B.Z. and Zielanski have been arguing at all, B.Z. responded they have not. Bielawski asked B.Z. if B.Z. told Zielanski that Bielawski had been visiting B.Z at school and B.Z. advised she had not told B.Z. about the visits.

45.  On or about October 11, 2022, upon information and beliefs, Bielawski sent an email to Montenegro stating Zielanski appealed the agencies opening of the GPS case and that the agency will not be granting his appeal.  Bielawski asks Montenegro to hold the case open and attempts to plan another visit to Zielanski's residence once he receives notice that his appeal was denied.

46.  The deadline for Zielanski to appeal BCCY's determination that B.Z. was in need of General Protective Services was October 7, 2022.  From August 30, 2022 through October 7, 2022, Zielanski sent several emails to BCCY requesting various documents and information so he could thoughtfully appeal BCCY's determination in their letter dated August 23, 2022, by the October 7, 2022 deadline.  BCCY never responded to Zielanski's emails by the appeal date.  Zielanski never technically submitted an appeal either.

47.  On October 26, 2022, BCCY Director McKeone, sent Zielanski a letter that denied his appeal that B.Z. was in need of General Protective Services.  McKeone denied Zielanski's appeal BUT Zielanski never actually appealed the decision to the agency director because Zielanski was still waiting for BCCY to provide him the information he requested in various emails and letters.  McKeone denied an appeal that was never made by Zielanski.

48.   On or about November 2, 2022, upon information and belief, Bielawski met with B.Z. at her school again.  During the meeting B.Z. discussed a disagreement that B.Z. had with Zielanski over the weekend. Bielawski told B.Z. that her father's appeal for the agency to open the case was denied.  Bielawski continued to tell B.Z. that Zielanski

originally agreed to take parenting classes but then appealed their decision. Bielawski never asked Zielanski about this incident.

49.  On November 14, 2022, after a bench trial, Zielanski was found innocent of all charges from his June 17, 2022 arrest.

50.  Upon information and belief, at various times between June 16, 2022 - February 9, 2023, various employees of BCCY and Detective Moffett, colluded with one another, to negatively impact Zielanski's in Zielanski's open custody matters being heard by Domestic Relations section of Bucks County Courthouse, by contacting Domestic Relations to notify them of Zielanski's involvement with BCCY.

51.  Upon information and beliefs, at various times between June 16, 2022 through February 9, 2023, various employee's of BCCY communicated with Keira Uslin, Zielanski's ex wife and B.Z.'s mother, via text, email, telephone phone, and in-person meetings.  As documented in the General Protective Service file notes that were made available to Zielanski to view,  Uslin made many lengthy and unsubstantiated accusations and mischaracterizations about Zielanski, Zielanski and B.Z.'s relationship, Zielanski's past, Uslin's involvement with B.Z., and all other circumstances that Uslin spoken to various BCCY workers and were subsequently recorded in their notes.  Never once did anybody from BCCY ever ask Zielanski about any of the accusations Uslin reported to BCCY and that BCCY included in their investigation, file notes, and likely contributed to their recommendations of an indicated child abuse finding and recommendation for General Protective Services.

52.  In or around August 2022, Zielanski appealed the "indicated determination" and requested a hearing before the Department of Human Services, Bureau of Hearing and Appeals.

53.  On September 19, 2022, Administrative Law Judge Christian Doyle, from Bureau of Hearing and Appeals, STAYED the requested appeal until the outcome of Zielanski's criminal proceedings. (BHA Docket No: 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)

54.  On December 6, 2022, Zielanski emailed a letter to McKeone, asking BCCY and McKeone to reconsider and reverse their determination to find Zielanski indicated of abuse and to find B.Z. in need of General Protective Services.  Zielanski reminded McKeone of the fact he was found innocent of all charges in the criminal proceedings and reminded McKeone of the very poor investigation BCCY conducting prior to reaching their unfair and unsupported determinations.

55.  On December 7, 2022, McKeone sent Zielanski a letter that stated she stands by the decisions the agency made during their investigation.  McKeone points out both appeals are still active with the Bureau of Hearing and Appeals.

56.  In or around December 2022, Zielanski appealed Director of BCCY McKeone's decision to deny Zielanski's appeal of the need for General Protective Services for B.Z. per their letter dated August 23, 2022.  Keep in mind the fact that Zielanski never actually made such an appeal to their letter dated August 23, 2022, but McKeone denied Zielanski's appeal anyway.  Zielanski's appeal in December 2022 was in response to McKeone's letter dated October 26, 2022.

57.  On or about December 16, 2022, Administrative Law Judge McMahon from Bureau of Hearing and Appeals, scheduled via an Order, a pre-hearing telephone

conference for April 5, 2023, to discuss Zielanski's General Protective Services appeal (BHA Docket No: 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).

58.  On Jan 30, 2023, Administrative Law Judge Christian Doyle, from Bureau of Hearing and Appeals, sent an Order requiring an update regarding the criminal proceedings relating to child abuse case (BHA Docket No: 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).

59.  On February 9, 2023, BCCY through their solicitor Elizabeth Oquendo, filed a Notice of Non-Pursuit, to not oppose Zielanski's appeal to reverse the "indicated determination" and to expunge his record (BHA Docket No: 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).

60.  On February 9, 2023, BCCY through their solicitor Elizabeth Oquendo, filed a Notice of Non-Pursuit, to not oppose Zielanski's appeal to reverse BCCY's decision to require General Protective Services and to expunge his record (BHA Docket No: 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).

61.  On March 1, 2023, Administrative Law Judge Doyle, issued a recommendation that Zielanski's appeal be sustained and that the Department of Human Services expunge the indicated report of child abuse.  (BHA Docket No: 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)

62. At the time of this pleading, Zielanski's appeal of the General Protective Services recommendation for B.Z is still be adjudicated but BCCY did file a Notice of Non-Pursuit as indicated above.

63.  On various dates from June 16, 2022 through the present, Zielanski asked BCCY via letter, email, and verbally to provide him a complete copy of their file that includes all the accusations, evidence, and other information to support their recommendations and final determinations regarding his involvement with their agency. BCCY refused to provide any information to Zielanski.

64.  On a few occasions from June 16, 2022 through the present, BCCY did allow Zielanski to come to their office and view small portions of their overall file. Zielanski was not allowed to make copies or take pictures of the documents.  The documents showed to Zielanski were mostly redacted and/or unintelligible and/or missing. During each visit, BCCY had Joanne Heckler sit with Zielanski and report back to BCCY all statements made by Zielanski during his review of the file.  Heckler never told Zielanski that her role in being present during the file review was to be a spy for BCCY.

65.  BCCY and all Defendants, restricted access to Zielanski to review his complete BCCY file and receive a copy of his complete BCCY file so Zielanski could properly investigate all the allegations made against Zielanski.

66.  BCCY and all Defendants, forced Zielanski into participating in the Triple P program with the full knowledge that doing so would violate Zielanski's right to remain silent by not making any self incriminating statements affording to Zielanski under the Fifth Amended of the United States Constitution.

67.  Pursuant to Statute and Regulations in particular including 23 Pa.C.S.§6302, among other duties, all Defendants was charged with the responsibility investigating report of child abuse competently and to preserve, stabilize and protect the integrity of family life and to not restrict the generally recognized existing rights of Zielanski to use reasonable supervision and control his child, but all Defendants breached their duty.

68.  Pursuant to Statute and Regulations in particular including 23 Pa.C.S.§6304, among other duties, all Defendants was charged with the responsibility to exclude from the determination of child abuse during their investigation and final report, use of force

for supervision, control, and safety purposes by Zielanski, which all Defendants failed to do.

69.  Pursuant to Statute and Regulations in particular including 23 Pa.C.S.§6304(d), among other duties, all Defendants was charged with the responsibility to preserve the rights of Zielanski by not restricting the generally recognized existing rights of parents to use reasonable force on or against their children for the purposes of supervision, control and discipline of their children. All Defendants have a duty to know that such reasonable force used by Zielanski should not be constituted child abuse but all Defendants failed to meet their responsibility.

70.  Pursuant to Statute and Regulations in particular including 23 Pa.C.S.§6303, among other duties, all Defendants was charged with understanding and properly applying and interpreting the meaning of the following words and phrases in their investigation and in their reports:   Bodily injury, Intentionally, Knowingly, Recklessly, Serious Bodily Injury, Serious Mental Injury, Substantial evidence, Substantiated child abuse, and Child abuse.

71.  Pursuant to Statute and Regulations in particular including 23 Pa.C.S.§6302(g), among other duties, all Defendants was charged with the responsibility to exclude from the determination of child abuse during their investigation and final report, use of defensive force by Zielanski, consistent with the provisions of 18 Pa.C.S. §§ 505, but all Defendants breached their duty.

72.  Pursuant to Statute and Regulations in particular including 23 Pa.C.S.§6334.1, among other duties, all Defendants was charged with the responsibility to investigate

the allegations of child abuse as provided in Title 23, Chapter 63, Child Protective Services, but all Defendants breached their duty.

73.  Pursuant to Statute and Regulation in particular including 23 Pa.C.S.§6375 & §6361, among other duties, all Defendants was charged with the responsibility to have sufficient staff of sufficient qualifications to fulfill the purpose of Title 23, Chapter 63, Child Protective Services, but all Defendants breached their duty.

74.  Pursuant to Statute and Regulation in particular including 23 Pa.C.S.§6370, among other duties, all Defendants was charged with the responsibility to explain that it has no legal authority to compel the family to receive the services from a private or public agency that the county agency contracted with, prior to offering these services to Zielanski, but all Defendants breached their duty.

75.  Pursuant to Statute and Regulations in particular including 23 Pa.C.S.§6368(d)(4), among other duties, all Defendants was charged with the responsibility to conduct an interview with Zielanski before concluding their investigation, but all Defendants breached their duty.

76.  Pursuant to Statute and Regulation in particular including 23 Pa.C.S.§6368(I), among other duties, all Defendants was charged with the responsibility of orally, prior to being interviewed, notifying Zielanski of his rights to amendment or expungement, Zielanski's right to have an attorney present during the interview, and written notice shall be given to Zielanski within 72 hours following oral notification, but all Defendants breached their duty.

77.  Pursuant to Statute and Regulation in particular including 23 Pa.C.S.§6368(d), among other duties, all Defendants was charged with the responsibility to only rely on a

factual investigation by a law enforcement agency to support the agency's finding, but all Defendants breached their duty.

78.  All Defendants knowingly and willfully disregarded all the sections of PA Title 23, Chapter 63, Child Protective Services Act, as cited in this pleading, and found Plaintiff indicated of child abuse and B.Z. in need of General Protective Services, without any evidence or facts consist with the Act, to support their decision.

79.  All Defendants knowingly and willfully rushed to judgement and rushed their investigation without giving Plaintiff an opportunity to introduce contradictory evidence or testimony.

80.  Doheny made up his mind up that Plaintiff would be determined to be "founded" for Child abuse on June 17, 2022 without the Plaintiff ever being interviewed or even made aware that such allegations exist, when Doheny communicated this determination to Detective Moffett in the driveway of the Rocco residence less than 24 hours since the initial report was even made.

81.  All Defendants knowingly and willfully disregarded the definition of Child Abuse and Bodily Injury as defined in PA Title 23, Chapter 63, Child Protective Services Act and Child Abuse as defined in the The Child Abuse Prevention and Treatment Act (CAPTA)(Public Law 104-235), when finding Zielanski indicated of child abuse.

82.  There isn't any evidence to suggest that B.Z. sustained any injuries consistent with how Title 23, Chapter 62, Child Protective Services Act defines bodily injury nor is there any evidence that B.Z. was in any physical pain or needed any medical treatment at any point.

83. All Defendants knowing and willfully disregarding the rights afforded to Zielanski under 18 Pa.C.S.§509, Use of force by persons with special responsibility for care, discipline or safety of others.

84. The actions of all Defendants deprived Zielanski of his freedom without due process of law and deprived Zielanski of his right to life, liberty and property in that he was unable to participate in society freely because all Defendants incorrect determination he was indicated of child abuse and subsequent reporting to the State and Childline.

85. The actions of all Defendants in not properly investigating the child abuse allegations against Zielanski as required in Title 23, Chapter 62, Child Protective Services Act and reaching an incorrect determination that Zielanski was indicated of child abuse and that B.Z. was in need of General Protective Services, showed a willful disregard for the reputation, right to life, right to liberty, and Zielanski's right to be a loving father.

86. Zielanski, being entitled under the Act and Regulations of Child Protective Services Law, United States Constitution, and Pennsylvania Constitution, was entitled to a competent and fair investigation, due process, and his liberties. Zielanski was further entitled to be advised of all of his due process rights during the investigation of the allegations made against him for chid abuse, which did not happen.

87. Were it not for the actions of all Defendants in incompetently and unfairly investigating the allegations, reaching determinations that aren't supported by facts or Child Protective Services Laws (CPSL), reporting Zielanski to the State and Childline database that he is indicated of child abuse and recommended B.Z. for General

Protective Services, notifying Zielanski's daughter (B.Z.) that he is indicated of child abuse and recommended for B.Z. for General Protective Services, notifying Keira Uslin that ZIelanski was indicated of child abuse and recommended B.Z. for General Protective Services, notifying the police that Zielanski is indicated for child abuse and recommended B.Z. for General Protective Services, notifying the school district that Zielanski is indicated for child abuse and recommended B.Z. for General Protective Services, notifying Camille Montenegro that Zielanski was indicated for child abuse and recommended B.Z. for General Protective Services, Zielanski would not have suffered the injuries herein.

88.  As a direct result of the actions and directions of all Defendants, Plaintiff and his daughter's (B.Z.) relationship was sustained immense difficulty, immense suffering, immense distress and unnecessary humiliation.

89.  As a direct result of the actions and directions of all Defendants, Plaintiff continues to suffer pain, emotional distress, public embarrassment, and financial harm.

### FIRST CAUSE OF ACTION
### FEDERAL CIVIL RIGHTS VIOLATION AGAINST PLAINTIFF

89.  Plaintiff incorporates by reference paragraph 1-89 of the Compliant as fully as though same were herein set both at length.

90.  As a direct and proximate result of the conduct of all Defendants herein, committed under color of state law, Defendants deprived Plaintiff of his right to due process of law and his right to life, liberty and reputation.  As a result, Plaintiff suffered and continues to suffer harm in violation of the of the Fifth and Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

91.  As a direct and proximate result of the acts of all Defendants, Plaintiff sustained pain, emotional harm, reputational harm, loss of liberty and financial losses.

92.  All Defendants have deprived Plaintiff of his rights under the Fifth and Fourteenth Amendments of the Constitution in that by their actions they have failed to meet the mandates and requirements of the Child Protective Services Act and Regulations promulgated thereunder.  Said Act and Regulations were enacted to assure that allegations of child abuse were investigated swiftly and competently, and to preserve, stabilize and protect the integrity of family life, and to not restrict the generally recognized existing rights of parents to use reasonable supervision and control when raising their children.

93.  All Defendants have further deprived Plaintiff of his rights under the Fifth and Fourteenth Amendments of the Constitution in failing to advise Plaintiff of his right to counsel before speaking to him, forcing Plaintiff into the Triple P program whereby participating in the program Zielanski might make self incriminating statements, failing to take a statement from the Plaintiff and visit his home to view evidence that would contradict the allegations made against him, failing to take statements from witnesses, failing to properly document statements made by the alleged victim of abuse about the incident, failing to conduct an investigation as required by the Child Protective Services Act and Regulations, and by reporting the Plaintiff as indicated of child abuse which caused damage to his reputation and deprived him of his liberty.

94.  All Defendants have further deprived Plaintiff of his rights under the Fifth and Fourteenth Amendments of the Constitution in that they have failed to adequately train

and supervise their personal to assure that the standards necessary to investigate the allegations against Plaintiff where met.

95.  All Defendants have further deprived Plaintiff of his rights under the Fifth and Fourteenth Amendments of the Constitution by failing to properly exercise their responsibilities while acting under color of state law.

96.  The harm suffered by Plaintiff was the direct and proximate result of the above stated actions of all Defendants.

97.  All Defendants have, by the above actions deprived Plaintiff of rights secured by the Fifth and Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION
## SUPPLEMENTAL STATE CLAIMS

97.  Plaintiff incorporates by reference paragraphs 1-97 of this Compliant as fully as though same were herein set both at length.

98.  The acts and conduct of all Defendants constitute invasion of privacy and intentional and wanton acts of negligence, deprivation of due process, deprivation of life and liberty, and deprivation to reputation and of pursuing happiness, reputational harm, emotional distress, financial damages, and deprivation of civil rights.  All of which are actionable under the laws of the Commonwealth of Pennsylvania.  This Court has supplemental jurisdiction to hear and adjudicate these claims.

WHEREFORE, Plaintiff demands the following:

a.  Compensatory damages in excess of $75,000 against all Defendants;

b.  Punitive Damages;

c.  Reasonable attorney fees and costs against all Defendants;

d.  An Order directing all Defendants to send an apology letter to Plaintiff for falsely

accusing him of Child Abuse, falsely accusing him of being in need of General

Protective Services, and for interfering with his relationship with his daughter.

e.  An Order directing all Defendants to send an apology letter to B.Z. for falsely

accusing her father of Child Abuse, falsely accusing her father of being in need of

General Protective Services, and for interfering with her relationship with her

father.

f.  Such other and further relief as appears reasonable and just; and

g.  A jury trial as to each defendant and as to each count

**I declare under penalty of perjury that the foregoing is true and correct to the best**

**of my knowledge based on all available and accessible information.**

Signed this ____3____ day of ____October_____. 2023

Michael Zielanski, pro se
2110 S Eagle Rd #336
Newtown PA 18940
215-669-5671